IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION

| | |
|---|---|
| WILLIAM BILL WALLACE,           ) | |
|       Plaintiff,                             ) | |
|                                                     ) | |
| v.                                              ) | CIVIL ACTION NO. 1:11-00662 |
|                                                     ) | |
| MICHAEL J. ASTRUE,                ) | |
| Commissioner of Social Security, ) | |
|       Defendant.                       ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered September 26, 2011 (Document No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties cross-Motions for Judgment on the Pleadings (Document Nos. 10 and 13.), and Plaintiff's Reply. (Document No. 14.)

The Plaintiff, William Bill Wallace (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on May 27, 2009 (protective filing date), alleging disability as of May 13, 2005, as follows:

> Cannot perform any job due to these limitations. I cannot lift more than 20 lb [and] cannot remember anything. The pain in my back and neck keep me from doing anything more than 10 min. Then I must stop, rest, let the pain subside. The numbness keeps me from being safe to operate machinery, electronics, etc. The uncontrollable high blood pressure causes tightness in chest, headaches, and anxiety. I also have prostate problems, bladder problems. EMS does not empty completely. The glaucoma is a painful serious problem because I cannot strain.

(Tr. at 11, 128–31, 132-34, 143, 155.) The claims were denied initially and upon reconsideration. (Tr. at 68-70, 75-77, 78-80 .) On December 25, 2009, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 81-82.) A hearing was held on March 10, 2011, before the Honorable William

B. Russell. (Tr. at 28-60.) By decision dated April 28, 2011, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-21.) The ALJ's decision became the final decision of the Commissioner on July 28, 2011, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) Claimant filed the present action seeking judicial review of the administrative decision on September 26, 2011, pursuant to 42 U.S.C. § 405(g). (Document No. 1.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2011). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2010). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is

incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

> decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, May 13, 2005. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that since May 13, 2005, the alleged onset date of disability, Claimant suffered from "status post myocardial infarction requiring no surgery or stents, neck pain, back pain, and bilateral carpel tunnel syndrome," which were severe impairments. (Tr. at 13, Finding No. 3.) As of the established onset date of disability, September 1, 2010, the ALJ found that Claimant suffered from "neuralgia and neuralgic pain," which also were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work with the following limitations.

> [P]rior to September 1, 2010, the date the [C]laimant became disabled, the [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently reach, and occasionally stoop, bend, kneel, crouch, but not climb or crawl. He should avoid operation of automotive equipment in a production setting and hazards such as moving machinery and unprotected heights. He requires 10 to 15 minute breaks every two hours. He may be absent from work on average 12 to 18 days a year.

(Tr. at 15-16, Finding No. 5.) Beginning on September 1, 2010, the ALJ found that Claimant had a RFC to perform sedentary level work with the following limitations:

> [Claimant] can frequently reach, and occasionally stoop, bend, kneel, crouch, but not climb or crawl. He should avoid operation of automotive equipment in a production setting and hazards such as moving machinery and unprotected heights. He requires 10 to 15 minute breaks every two hours. He may be absent from work on average 19 to 25

days a year.

(Tr. at 18, Finding No. 6.) At step four, the ALJ found that since May 13, 2005, Claimant was unable to return to his past relevant work. (Tr. at 19, Finding No. 7.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that prior to September 1, 2010, Claimant could perform jobs such as a counter person, silver wrapper, and records clerk, at the light level of exertion. (Tr. at 19-20, Finding No. 11.) On this basis, benefits were denied prior to September 1, 2010. (Tr. at 20, Finding No. 11.) The ALJ further concluded that beginning on September 1, 2010, and pursuant to Medical-Vocational Rule 201.10, Claimant was disabled. (Tr. at 20, Finding Nos. 12 and 13.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on March 28, 1956, and was 54 years old at the time of the administrative

hearing on March 10, 2011. (Tr. at 130.) The ALJ found that Claimant had an eleventh grade, or limited education and was able to communicate in English. (Tr. at 19, 36, 154, 163.) In the past, he worked as an electronic motor maintenance/sales person. (Tr. at 19, 146-49, 156-57.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in choosing September 1, 2010, as the onset date of disability. (Document No. 10 at 2-5.) In choosing this onset date, Claimant asserts that the ALJ found determinative the date on which his treating podiatrist, Dr. Horowitz, diagnosed neuralgia or neuralgic pain on September 15, 2010. (Id. at 2.) Claimant contends however, that the record reflects that he had foot pain and numbness in his feet as early as October 20, 2009, as documented in Dr. Yates's treatment notes and mentioned in Dr. Raval's notes. (Id. at 3.) Claimant asserts that the ALJ failed to acknowledge these records. (Id.) He notes that Dr. Yates diagnosed peripheral neuropathy/pain and numbness in his feet on five separate occasions between October 20, 2009, and September 29, 2010. (Id. at 4.) Dr. Yates prescribed Darvocet and Amitriptiline for Claimant's foot pain, which he asserts reflects the severity of the problem. (Id.) It was Dr. Yates who referred Claimant to Dr. Horowitz, as he was a specialist in podiatry. (Id.) Claimant notes that Dr. Raval likewise documented his complaints of pain and numbness on October 21, 2009. (Id.) Claimant asserts that it is undisputed that the peripheral neuropathy of his feet as described by Dr. Yates is the same numbness and pain that Dr. Horowitz called neuralgia or neuralgic pain. (Id.) Because the ALJ already determined that Dr. Yates's treatment notes and opinions were reliable, Claimant asserts that the ALJ's error in acknowledging his treatment notes is harmless. (Id. at 5.) Accordingly, Claimant asserts that this Court should find an onset date of October 29, 2009. (Id.)

In Response, the Commissioner asserts that the ALJ properly determined that Claimant was not entitled to DIB prior to December 31, 2009, and that he properly was awarded SSI beginning September 1, 2010. (Document No. 13 at 5.) The Commissioner asserts that although Claimant may have complained of pain or a worsening of a condition after his date last insured, it is not enough to prove disability. (Id. at 6.) Moreover, the Commissioner asserts that even if Claimant experienced foot pain, he failed to establish any functional limitations from October 2009, forward that "derived directly from his alleged foot pain." (Id.) Contrary to Claimant's assertion, the Commissioner asserts that a conflict exists regarding the severity of his foot condition between October 2009 and December 2009. (Id. at 7.) Though Dr. Yates diagnosed neuropathy, the Commissioner maintains that there was no objective evidence to confirm or prove the severity of the condition. (Id.) Likewise, Dr. Raval's treatment notes are devoid of any examination findings or diagnosis on October 21, 2009. (Id.) The Commissioner asserts that Claimant's foot pain did not become severe enough for testing and treatment until August 30, 2010, which was nine months after his date last insured. (Id.) Accordingly, the Commissioner asserts that the ALJ properly evaluated the evidence of record and determined that Dr. Horowitz's notes from August 30, 2010, reflected the first relevant evidence of his foot condition. (Id.)

In Reply, Claimant reiterates his previously asserted arguments. (Document No. 14.) Specifically, Claimant asserts that the peripheral neuropathy described by Dr. Yates was the same numbness and foot pain that Dr. Horowitz diagnosed as neuralgia or neuralgic pain. (Id. at 1.) Though the Commissioner attempts to discount his prior complaints as isolated complaints, Claimant asserts that such complaints were made on at least five occasions to Dr. Yates. (Id. at 2.) Finally, Claimant asserts that the Commissioner cannot contend that even if Claimant had neuralgic foot pain prior to the date last insured, he did not demonstrate any resulting limitations. (Id.) Claimant asserts that is because the ALJ already determined that he was disabled when the neuralgic foot pain began. (Id.) Accordingly, Claimant asserts

that a reversal of the Commissioner's decision is warranted with a granting of benefits with an onset date of October 20, 2009. (Id. at 3.)

Analysis.

The medical evidence reveals that on October 20, 2009, Claimant complained of bilateral leg pain. (Tr. at 549.) Dr. Jonathan Yates, M.D., Claimant's treating physician, diagnosed peripheral neuropathy and referred him to Dr. Raval. (Tr. at 550.) Examination revealed normal muscle strength, reduced range of motion, and pain with his gait. (Tr. at 549.) Claimant was examined on October 21, 2009, by Dr. Jugal T. Raval, M.D., for his complaints of pain in his legs and feet. (Tr. at 499.) Claimant reported that his heel pain was the worst pain and that he also experienced numbness and tingling in the bilateral legs and feet. (Id.) Dr. Raval's treatment notes however, do not reflect any examination findings regarding Claimant's pain in his legs and feet or any assessment related thereto. (Id.) Claimant returned to Dr. Raval on November 17, 2009, for the results of a neck MRI. (Tr. at 510.) Dr. Raval's treatment notes did not reflect any mention of Claimant's pain in his legs and feet. (Id.)

Claimant returned to Dr. Yates on November 17, 2009. (Tr. at 547-48.) Treatment notes reflect only a diagnosis of peripheral neuropathy for which Dr. Yates prescribed Darvocet and Amitriptiline, but do not evidence any specific complaints of foot pain. (Id.) Dr. Yates continued his diagnosis on January 26, 2010, and March 23, 2010, without any notations of alleged foot pain (Tr. at 543-44, 545-46.) On August 30, 2010, Claimant specifically complained of pain in his feet, which caused pain on standing and on the ball of his foot and under the metatarsals. (Tr. at 538.) Dr. Yates again diagnosed peripheral neuropathy and referred Claimant to a podiatrist because the problem most likely was mechanical. (Tr. at 538-39.) Dr. Yates ordered an arterial study based on Claimant's complaints of pain in the bottom of his feet, including the heels and balls of his feet, which was conducted on August 31, 2010. (Tr. at 562, 650.) The study was normal without evidence of prominal or distal vessel disease. (Id.) On September 29, 2010, Dr. Yates noted that Claimant had seen a podiatrist for his peripheral neuropathy

and was prescribed custom made shoes. (Tr. at 536-37.)

Claimant first was examined by Dr. Horowitz on September 15, 2010, for complaints of joint pain and muscle cramping in his feet. (Tr. at 564-68.) He stated that his feet and legs hurt when he walked, stood, or sat, and that nothing alleviated the pain, which he described as burning, tingling, and numbness. (Tr. at 564.) Claimant indicated occasional muscle spasms and cramps in his left leg and that his right leg "just hurts." (Id.) Claimant reported that the pain was moderate in severity and interfered with his daily activities and limited his wearing shoes, walking, standing, lifting, and working, and also caused a sleep problem. (Id.) Examination revealed decreased pin prick sensation, positive Tinel's sign, and decreased pulses. (Tr. at 565-66.) An arterial doppler study was normal. (Tr. at 566.) Dr. Horowitz noted that Claimant's bilateral Achilles tendons were concentrically elongated and did not allow ankle flexion beyond five degrees. (Id.) X-rays of the ankles and feet essentially failed to reveal any significant findings. (Tr. at 566-67.) Dr. Horowitz diagnosed neuralgia (Neurapraxia of Plantar Nerve), Neuralgic pain due to unknown causes, Myalgia and Neuralgic pain, enthesopathy, plantar fasciitis both feet, osteoarthritis, and degenerative joint disease localized in both feet, and ASO with claudication. (Tr. at 567.) He prescribed Voltaren EC for arthritis pain and nerve blocks. (Tr. at 567-68.) Dr. Horowitz opined that Claimant's prognosis was guarded because "there might be an underlying problem yet to be identified." (Tr. at 568.) He reported that the severity of Claimant's condition was moderate to complex. (Id.)

On September 22, 2010, Claimant reported that the injections helped with the pain, but that the pain had returned, primarily in his heels. (Tr. at 569.) Examination of Claimant's heels revealed pain to palpation. (Tr. at 570.) Claimant reported that the pain occurred when he first placed weight on his foot and Dr. Horowitz suspected a tearing attachment of the AHB with a secondary periostitis. (Id.) He recommended and prescribed new orthotics and orthopedic shoes. (Id.) The record reflects Claimant's continued treatment with Dr. Horowitz through February 15, 2011. (Tr. at 571-93.)

To establish a period of disability for DIB, a claimant must establish disability on or before his

date last insured. 20 C.F.R. § 404.131(a) (2011). In the instant case, Claimant met the insured status requirements through December 31, 2009, his date last insured. To be entitled to DIB therefore, Claimant had to establish disability on or before December 31, 2009. The ALJ determined that Claimant was disabled beginning on September 1, 2010, which was about nine months after his insured status had expired. (Tr. at 20.) Claimant contends however, that the onset date of disability should have been October 20, 2009, the date on which Dr. Yates acknowledged Claimant's complaints of foot pain and numbness for which he diagnosed peripheral neuropathy. (Document No. 10 at 3.) It was not until August 31, 2010, that Dr. Yates referred Claimant to Dr. Horowitz, a podiatrist, for further assessment and treatment. Claimant was examined by Dr. Horowitz on August 31, 2010, at which time he complained of pain and reported limitations resulting from the painful condition of his feet. The ALJ therefore, determined that as of September 1, 2010, Claimant's allegations regarding his symptoms and limitations were determined to have been generally credible. (Tr. at 18.) Dr. Horowitz conducted laboratory studies and his treatment notes reflected examination findings.

      Based on the foregoing, the undersigned finds that although Claimant may have complained of foot pain as early as October 20, 2009, treatment notes failed to reflect anything beyond the bare complaint. Admittedly, Dr. Yates diagnosed peripheral neuropathy, but his treatment notes did not reflect examination findings or specific complaints of pain or limitations from Claimant. It was not until August 30, 2010, that Claimant reported to Dr. Yates and Dr. Horowitz the specific location of his pain and that the pain caused pain on standing. He reported further limitations related to the pain in his feet to Dr. Horowitz. Accordingly, the undersigned finds that the evidence did not establish pain in Claimant's feet of a disabling nature until August 31, 2010. It may be that the pain had increased after Claimant's date last insured, which does not entitle to him DIB. Nevertheless, the record clearly demonstrates that specific pain and resulting limitations were not identified in the treatment notes until August 31, 2010. Accordingly, the undersigned finds that the ALJ's decision that Claimant is not entitled to DIB and is entitled to SSI as of September 1, 2010, is supported by the substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Senior Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: March 1, 2013.

R. Clarke VanDervort
United States Magistrate Judge